UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN L. PATRICK, | ) | CASE NO. 4:06CV639 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | Magistrate Judge George J. Limbert |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DAVID BOBBY, et al., | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Defendants. | ) | |

The above case is before this Court on a motion for summary judgment filed by Defendant Chris Caja (Defendant) pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Dkt. #28. Surprisingly, the consistently diligent Plaintiff Brian L. Patrick (Plaintiff), an inmate at the Trumbull Correctional Institution (TCI) in Leavittsburg, Ohio, has not filed a brief in opposition to Defendant's motion for summary judgment. Nevertheless, for the following reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment. ECF Dkt. #28.

**A.  FACTS AND PROCEDURAL HISTORY**

Plaintiff filed a pro se complaint in this Court pursuant to 42 U.S.C. § 1983 on March 20, 2006 against numerous defendants, including TCI Warden David Bobby, TCI Deputy Warden Julie Loomis, TCI Sergeant Raymond Lewis, TCI Chief Medical Officer Dr. James Kline, TCI Nurse Roger Baker, TCI Health Administrator Marilyn Lane and Defendant, a TCI Unit Manager. ECF Dkt. #1. Plaintiff alleged that these officials violated his Eighth Amendment rights by exposing him

1

to environmental tobacco smoke (ETS) when they disregarded a medical restriction requiring that he be placed in a non-smoking unit of the prison due to a smoke allergy. *Id.*

Plaintiff filed an amended complaint on May 16, 2006 naming only Defendant as an opposing party and captioning the complaint as a suit against Defendant in both his official and individual capacities. ECF Dkt. #5. On May 23, 2006, the Honorable Peter C. Economus issued a Memorandum Opinion and Order dismissing all of the Defendants listed in Plaintiff's original complaint except for Defendant since Plaintiff's amended complaint only listed Defendant and Plaintiff indicated on the preprinted complaint form that no additional defendants existed except for Defendant. ECF Dkt. #7.

On May 23, 2006, Judge Economus referred the instant case to the undersigned for general pretrial supervision, including the ruling or issuance of Reports and Recommendations on all motions. ECF Dkt. #8. On April 12, 2007, Defendant filed the instant motion for summary judgment on Plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Dkt. #28. Plaintiff has not responded to the motion.

**B.    STANDARD OF REVIEW**

In his motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant asserts that Plaintiff cannot prove an Eighth Amendment ETS exposure violation because he cannot present any evidence to support his claim that Defendant was deliberately indifferent to his serious medical need to be placed in a non-smoking unit of the prison. ECF Dkt. #28 at 3-4. Defendant contends that Plaintiff cannot establish the objective or subjective components of an ETS exposure claim. *Id.*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides in pertinent part:

>   (c)    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the

2

> affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion, and must identify the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986). This initial burden can be discharged by the moving party if he shows that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he bears the ultimate burden of proof at trial. *Id.; Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

If the moving party meets his burden on summary judgment, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *Id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *Id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *Celotex Corp*., 477 U.S. at 322.

**C.     LAW AND ANALYSIS**

    **1**.     **42 U.S.C. § 1997e(e) - PHYSICAL INJURY REQUIREMENT**

Defendant asserts that Plaintiff cannot establish the requisite physical injury necessary under 42 U.S.C. §1997e(e) in order to pursue his §1983 claims for money damages. ECF Dkt. #28 at 26-31. Defendant posits that while Plaintiff avers in his amended complaint that he suffered numerous physical ailments and severe allergic reactions from exposure to ETS, no medical documentation in his prison medical files show that he suffered any serious injury resulting from remaining in the smoking unit.

The Prison Litigation Reform Act requires a prior showing of physical injury before a prisoner may bring a claim for emotional or mental damages. 42 U.S.C §1997e(e). Section 1997e(e) states:

> e) Limitation on recovery
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered.

*Id*. This statute applies to Eighth Amendment claims. *Jarriett v. Wilson,* 162 Fed. Appx. 394, at \*\*4, citing *Grissom v. Davis*, 55 Fed. Appx. 756, 758 (6th Cir. 2003), *Lucas v. Nichols*, 81 F.3d 102(Table), 1999 WL 253711 (6th Cir. Apr. 23, 1999), unpublished, citing *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir.1997), and *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997). While a physical injury need not be significant, the Sixth Circuit Court of Appeals has held that it must be more than *de minimis* in order to proceed on the claim. *Jarriett*, 162 Fed. Appx. at \*\*4.

The undersigned recommends that the Court find that Plaintiff cannot establish a physical injury beyond more than a *de minimis* injury in order to proceed on his claim. The medical records do not establish any complaint by Plaintiff relating to physical injury or illness due to remaining in a smoking unit until he presented to the infirmary on November 30, 2004 requesting

4

to be moved to a non-smoking unit. ECF Dkt. #28, Exhibit 1 at 58. The nurse noted physical findings of facial erythema with clear lung sounds and referred Plaintiff to a medical doctor for further assessment. *Id*. Plaintiff thereafter received a medical restriction from Dr. Kline on December 24, 2004 to non-smoking housing. *Id.* at 60. However, Dr. Kline attested in his affidavit before this Court that while he did issue a non-smoking housing restriction, no medical urgency existed to move Plaintiff immediately and he could not state with a reasonable degree of medical certainty that the redness observed on Plaintiff's face on November 30, 2004 was due to ETS exposure, in light of Plaintiff's other medical conditions of gout and obesity. ECF Dkt. #28, Exhibit 17 at 2. Further, while Plaintiff discusses other symptoms that he suffered allegedly as a result of continued ETS exposure, he fails to submit documentation confirming infirmary visits or complaints of symptoms relating to this exposure to medical personnel until the November 30, 2004 nursing assessment.

Consequently, viewing the evidence in a light most favorable to Plaintiff, he is unable to show that he suffered more than a *de minimis* injury, if any injury at all due to continued exposure to ETS as contradiction even surrounds whether the ETS exposure caused the only symptom that medical personnel observed on November 30, 2004. Accordingly, the undersigned recommends that the Court find that Plaintiff cannot sustain his Eighth Amendment claim against Defendant because he cannot show a physical injury pursuant to §1997e(e).

**2.    EIGHTH AMENDMENT ETS EXPOSURE CLAIM**

Even presuming that Plaintiff could establish more than the requisite physical injury resulting from the ETS exposure in order to proceed on his claim, the undersigned nevertheless recommends that the Court grant Defendant's motion for summary judgment because Plaintiff cannot establish the requisite elements of his Eighth Amendment ETS exposure claim.

As outlined in the undersigned's previous Report and Recommendation on Defendant's motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain'" on a prisoner by acting with "deliberate indifference" to the prisoner's serious medical needs. ECF Dkt. #14, quoting *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir.2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In determining deliberate indifference based on exposure to ETS, the Court looks at objective and subjective components. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In order to meet the objective component, a prisoner must show that his medical needs are "sufficiently serious." *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992). Exposure to smoke must cause more than "mere discomfort or inconvenience." *Id.* at 735. The prisoner can also establish the objective component of an ETS claim by alleging that, regardless of his health, the level of ETS in the prison creates an unreasonable risk of serious harm to his future health. *Id*. The prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling,* 509 U.S. at 36, 113 S.Ct. 2475. In order to satisfy the subjective component for establishing deliberate indifference based upon ETS exposure, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs. *Id.* at 32, 113 S.Ct. 2475.

Plaintiff in this case avers that Defendant acted deliberately indifferent to his serious medical need to be placed in a non-smoking unit because he informed Defendant of his tobacco smoke allergy and Defendant, as the supervisor with authority to make cell transfers, was the only person who could have ensured Plaintiff a non-smoking cell. ECF Dkt. #5 at 4b. According to Plaintiff, he arrived at TCI on February 10, 2004 and was placed in a smoking unit until he

notified the proper officials of his smoke allergy and he was immediately moved to a non-smoking block. *Id*. at 4. However, in November of 2004, he was transferred back to a smoking unit and on November 23, 2004 he orally requested that Defendant move him to a non-smoking block. *Id.* Plaintiff avers that Defendant informed him on November 29, 2004 in writing that Plaintiff needed to "Kite Sgt. Dezee, he has a waiting list for inmates that want to go to the non-smoking block." *Id.* Plaintiff "kited" Sergeant Dezee on that same day and Sergeant Dezee informed him in writing on November 30, 2004 that he had been placed on the waiting list for a non-smoking block. *Id.*

Plaintiff avers that he continued to experience severe reactions due to having to remain in the smoking block at TCI with his allergy. ECF Dkt. #5 at 4a. He contends that he went to the medical unit in late November 2004 and he sent additional correspondence to Warden Bobby complaining that other inmates who were not on the waiting list were nevertheless being moved to the non-smoking unit. *Id.* Plaintiff asserts that Warden Bobby informed him that he needed to work this problem out with his unit staff. *Id.*

Plaintiff asserts that he continued to suffer from asthma, shortness of breath, chest pains, migraines, dizziness, facial skin breakouts causing sores, nausea and watery eyes from November 19, 2004 until February 7, 2005, when he was finally transferred back to a non-smoking unit. ECF Dkt. #5 at 4c. He contends that Defendant acted with deliberate indifference by not moving him immediately into a non-smoking unit after he complained of his allergy and physical symptoms. *Id*. at 4b.

    **a.**    **OBJECTIVE COMPONENT OF ETS EXPOSURE CLAIM**

The Sixth Circuit Court of Appeals has indicated that in order to establish the objective component of an ETS exposure claim, the plaintiff must show an "objectively sufficiently serious" medical need. *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005), quoting *Hunt v.*

*Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The Sixth Circuit has described an "objectively sufficiently serious" medical need as one where a plaintiff's injury or illness "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004).

In moving for summary judgment on Plaintiff's complaint pursuant to Rule 56, Defendant first contends that Plaintiff cannot meet the objective component of his ETS claim because he cannot show a sufficiently serious medical condition which required his immediate move to a non-smoking unit. ECF Dkt. #28 at 8-13. Defendant first asserts that the medical records obtained through discovery contradict Plaintiff's amended complaint allegations that his prison medical records contain notations beginning "around September 16, 2002" that established the existence of his allergy to tobacco smoke. *Id*. at 8. Defendant states that only six records of the one-hundred pages of medical records refer to a smoke allergy and closer inspection of these records fails to establish a physician-mandated medical restriction from smoking cells until December 24, 2004 and even then, that restriction did not indicate an immediate need for a move. *Id.* at 8-9. Moreover, Defendant contends that Plaintiff was thereafter moved to a non-smoking cell on January 24, 2005, when space became available on the non-smoking block after he complained. *Id.* at 13. Defendant contends that these facts show that Plaintiff did not have a sufficiently serious medical need for immediate transfer to a non-smoking cell and moving Plaintiff one month after an actual medical restriction was placed in his file with no immediate move required did not constitute a constitutional deprivation. *Id.*

Unfortunately, Plaintiff has not responded to Defendant's motion for summary judgment and therefore he presents no evidence to raise a genuine issue of material fact relating to the objective component of his Eighth Amendment claim. Nevertheless, upon the undersigned's

8

review of Plaintiff's amended complaint, Defendant's motion for summary judgment, and Plaintiff's medical records which Defendant attached to his motion, the undersigned recommends that the Court grant summary judgment in favor of Defendant on this issue.

A review of the medical records reveal that despite Defendant's assertion to the contrary, Plaintiff is indeed correct that his medical records contain a notation relating to a tobacco smoke allergy in September 2002. A health history form dated September 6, 2002 indicates "nkda" or no known drug allergies, but then it also very faintly shows next to "allergies" an illegible handwritten word, followed by the handwritten words "smoke" and "peanuts". ECF Dkt. #28, Exhibit 1 at 14. Moreover, the Doctor's Order records in the file show intermittent notations of Plaintiff's smoke and peanut allergies starting in November 2002. ECF Dkt. #28, Exhibit 2 at 2.

However, even viewing this evidence in a light most favorable to Plaintiff, the notations in the file merely show a self-reported smoking allergy and Plaintiff's prior placement in non-smoking cells. The fact remains that no medical notations in the file establish a physician-rendered medical diagnosis of an allergy to tobacco smoke. Nor do the records establish that Plaintiff had smoking allergy symptoms so obvious that a doctor's attention was necessitated. The first indication of symptoms possibly related to a smoke irritation or allergy are not present in Plaintiff's file until a nursing assessment was done on November 30, 2004 when Plaintiff presented to the infirmary and requested placement to a non-smoking block due to his smoke allergy. ECF Dkt. #28, Exhibit 1 at 58. The nurse indicated that facial erythema was present and referred Plaintiff for a medical doctor review. *Id.* Thereafter, on December 24, 2004, Dr. Kline ordered long-term restrictions which included non-smoking housing. *Id.* at 60. However, Dr. Kline attests in affidavit before this Court that he cannot state with any degree of medical certainty that the facial erythema present on Plaintiff's face was the result of exposure to ETS due to Plaintiff's other health conditions of gout and obesity. ECF Dkt. #28, Exhibit 17 at 2. Dr.

9

Kline also attests that even when he ordered the non-smoking unit restriction, no medical urgency existed for Plaintiff's immediate move to non-smoking accommodations. *Id.*

Moreover, according to his own amended complaint allegations, Plaintiff had orally requested from Defendant placement in a non-smoking unit on November 23, 2004, just seven days prior to his visit to the infirmary, and Defendant had already responded in writing to Plaintiff before his infirmary visit, informing Plaintiff that he needed to "kite" Sergeant Dezee about placement in a non-smoking unit. ECF Dkt. #5 at 4. Sergeant Dezee indicated to Plaintiff in writing on November 30, 2004 that he had placed Plaintiff's name on the waiting list for a non-smoking unit. *Id.*

For these reasons, the undersigned recommends that the Court find that Plaintiff cannot meet the objective component of his ETS exposure claim because he cannot establish that he had a sufficiently serious medical need for immediate placement in a non-smoking unit at the time of his request. Moreover, no medical records establish that Plaintiff's need for a non-smoking unit was so obvious that even a layperson would easily recognize the necessity for a doctor's attention and an immediate move to a non-smoking unit. And finally, Plaintiff has not established that his exposure to ETS levels was so great that it posed an unreasonable risk of serious damage to his future health. Thus, the undersigned recommends that the Court grant summary judgment in Defendant's favor because Plaintiff fails to meet the objective components of establishing his ETS exposure claim.

### b. SUBJECTIVE COMPONENT OF ETS EXPOSURE CLAIM

Even if Plaintiff could establish the objective component of his claim, he must also establish the subjective component of his ETS exposure claim in order to survive Defendant's motion for summary judgment. In order to establish this component, a prisoner must allege specific incidents of deliberate indifference by prison officials. *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986). The prisoner must establish that the prison officials knew of, and

10

manifested deliberate indifference to, his serious medical needs. A prison official may be liable under the Eighth Amendment only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.E.2d811 (1994). Both the United States Supreme Court and the Sixth Circuit Court of Appeals have applied a recklessness standard when determining deliberate indifference. *Id.* at 839-840; *Kelly v. Wehrum,* No. 98-3172, 1999 WL 455327 at *3 (6th Cir. June 23, 1999), unpublished, citing as an example, *Street v. Corrections Corporation of America*, 102 F.3d 810, 815 (6th Cir. 1996). Thus, in order to establish deliberate indifference, a prisoner need not prove that the prison officials "intended the consequences of their indifference, but the prisoner is required to present proof that the prison officials knew of the risk but disregarded it." *Id.*

Here, Plaintiff asserts that Defendant acted deliberately indifferent to his smoke allergy because he told Defendant of his allergy, Defendant knew that keeping him in a smoking unit with an allergy was dangerous, and Defendant was the "sole person who could have ensured a non-smoking cell for Patrick because Mr. Caja was the supervisor of Sgt. Dezee and Mr. Caja had the authority to make cell transfers." ECF Dkt. #5 at 4b. In moving for summary judgment on Plaintiff's claim, Defendant asserts that Plaintiff cannot show that he acted with deliberate indifference to his health or safety because Plaintiff did not substantiate his allergy or need to be immediately moved to a non-smoking unit when he requested a transfer. Further, Defendant contends that when Plaintiff did broach the subject with Defendant on November 23, 2004, he responded to Plaintiff in writing only six days later on November 29, 2004, informing Plaintiff that he needed to "kite" Sergeant Dezee so that Sergeant Dezee could put him on the transfer list to a non-smoking unit. ECF Dkt. #28 at 14-15. Plaintiff was thereafter placed on the waiting list and moved about one month later.

11

The undersigned recommends that the Court find that Plaintiff cannot establish that Defendant was deliberately indifferent to Plaintiff's smoking allergy or his need to be placed in a non-smoking unit. First, the records fail to show that Defendant was aware of or should have been aware of any risk in not moving Plaintiff into a non-smoking unit immediately. There is no medical evidence contradicting Defendant's assertion that when Plaintiff first informed him of his need to be moved to a non-smoking unit, Plaintiff lacked any medical documentation establishing his allergy or an immediate need to be moved. In fact, as mentioned *supra*, no physician-mandated medical diagnosis of a smoke allergy existed in Plaintiff's file at the time of his contact with Defendant as Dr. Kline did not issue an actual order restricting Plaintiff to a non-smoking unit until December 24, 2004. And even then, Dr. Kline indicated in his affidavit that no medical urgency existed to move Plaintiff immediately from the smoking unit to the non-smoking unit. ECF Dkt. #28, Exhibit 17 at 2. Moreover, even if a medical diagnosis or restrictive order existed in Plaintiff's medical file, Defendant indicated in his answer to interrogatories that he had no authority in which to review inmate medical files. ECF Dkt. #28, Exhibit 12 at 1. No evidence contradicts Defendant's statement regarding his lack of authority to review inmate medical files.

Finally, Plaintiff cannot show that Defendant's response showed deliberate indifference as the response was timely, contained the correct information, and eventually resulted in Plaintiff being moved into a non-smoking unit within two months of his first request to be moved. Plaintiff admits in his amended complaint that he inquired of Defendant about moving to a non-smoking unit on November 23, 2004 and Defendant responded to him in writing on November 29, 2004 and told him to "kite" Sergeant Dezee, which he did and Sergeant Dezee wrote back immediately, informing him that he was placed on the transfer list. ECF Dkt. #5 at 4. Plaintiff did not even visit the infirmary complaining about symptoms allegedly resulting from the tobacco smoke exposure until November 30, 2004.

12

For these reasons, the undersigned recommends that the Court grant summary judgment in Defendant's favor because Plaintiff cannot meet the subjective component of establishing his Eighth Amendment ETS exposure claim.

### 3. QUALIFIED IMMUNITY

Finally, Defendant moves for summary judgment against Plaintiff's individual capacity claims against him, arguing that he is entitled to the defense of qualified immunity.  ECF Dkt. #28 at 20-22.  The undersigned recommends that the Court grant summary judgment in Defendant's favor on the issue of qualified immunity.

Defendant first moves for summary judgment on Plaintiff's claims by asserting that the "course of proceedings" test enunciated by the Sixth Circuit in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001) applies in its converse to entitle him to summary judgment on Plaintiff's individual capacity claims against him.  ECF Dkt. #28 at 20-21.  In *Moore*, the Sixth Circuit held that while it is clearly preferable for a plaintiff to explicitly state whether he is suing a defendant in his official or individual capacity, "failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." 272 F.3d at 772.  Defendant reasons that because Plaintiff's "course of proceedings" confined themselves in this case solely to his official capacity even though Plaintiff captioned his amended complaint as including both official and individual capacity claims, a defendant can also reasonably believe that he is being sued only in his official capacity when each of the plaintiff's complaint allegations made during the "course of proceedings" limit the defendant's capacity to an official capacity.  ECF Dkt. #28 at 19-20.

The undersigned tends to agree with Defendant.  It is true that while Plaintiff in this case captions his complaint against Defendant in both his official and individual capacities, the body of the complaint contains no reference or inference relating to suing Defendant in his individual capacity.  Plaintiff clearly limits his lawsuit against Defendant to an official capacity claim as his

13

first allegation is that "Defendant Caja has acted, and continued to act, under color of state law at all times relevant to this complaint."  ECF Dkt. #5 at 3.  Further, all of Plaintiff's complaint allegations against Defendant discuss that which Defendant "knew or should have known" in his capacity as supervisor or unit manager "responsible for the overall operation of the unit."  *Id*. at 4a, 4 , 17-19, 21-22.  While *pro se* complaints are to be construed liberally, the undersigned agrees that the Court could in fact confine Plaintiff's amended complaint allegations against Defendant to his official capacity only since Plaintiff provides no inference or reference pertaining to an individual capacity claim beyond the caption of his amended complaint.  Thus, the Court could grant summary judgment in Defendant's favor on this issue.

     Nevertheless, even if the captioning of his amended complaint against Defendant as both in an individual and official capacity is sufficient in itself to state an individual capacity claim, the undersigned recommends that the Court find that Defendant is still entitled to qualified immunity.  The affirmative defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once the defendants show facts that suggest that they were acting within their discretionary authority during the incident, "the burden then shifts to the plaintiff to show that the defendant[s'] conduct violated a right so clearly established that any official in [their] position would have clearly understood that [they] were under an affirmative duty to refrain from such conduct." *Flint v. Kentucky Dep't of Corr.,* 270 F.3d 340, 347 (6th Cir. 2001), citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

     The Sixth Circuit has established a tripartite procedure for reviewing claims of qualified immunity.  In the first step, the Court determines if a constitutional violation occurred. *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).  This first step applies regardless of

whether a prisoner plaintiff is seeking damages or injunctive relief. *Williams v. Mehra*, 186 F.3d 685 (6th Cir.1999). In the second step, the Court determines whether the right that the officials violated was clearly established at the time of the alleged incident. *Dickerson*, 101 F.3d at 1157. The final step involves the Court determining "'whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights.'" *Id*. at 1158, quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir.1994).

In the instant case, while Plaintiff captions his amended complaint as one against Defendant in both his official and individual capacity, Plaintiff fails to dispute that Defendant was acting in his role as unit manager at the time of his request to be placed in a non-smoking unit. Therefore, the burden shifts to Plaintiff to overcome Defendant's assertion of qualified immunity.

Accordingly, in order to overcome qualified immunity, Plaintiff must first establish that a constitutional violation occurred. Plaintiff alleges that his ETS exposure constitutes a constitutional violation. He avers that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment when he acted deliberately indifferent to his serious medical needs by continuing to expose him to tobacco smoke knowing that he had a smoke allergy. However, as explained more thoroughly in the preceding portions of this Report and Recommendation, Plaintiff cannot meet the elements of establishing a constitutional violation based upon ETS exposure.

First, Plaintiff has not established and his medical records fail to reveal that he had a physician-diagnosed smoke allergy or other sufficiently serious medical need requiring immediate placement in a non-smoking unit at the time that he requested Defendant to move him to a non-smoking unit. Nor does Plaintiff establish that he was subjected to an unreasonable amount of ETS or that his symptoms were so obvious that a layperson could have made that

15

conclusion.

Plaintiff's medical files reveal no complaints or symptoms relating to his smoke allergy until the November 30, 2004 nursing assessment in which he requested a transfer and the nurse referred him for a physician assessment due to facial erythema.  Dr. Kline examined Plaintiff and thereafter issued a medical restriction to a non-smoking unit on December 24, 2004, well after Plaintiff had requested the transfer from Defendant and Defendant had already responded to the request.  Further, Dr. Kline stated in his affidavit that while he did place Plaintiff on a non-smoking unit restriction, he could not state within a reasonable degree of medical certainty that Plaintiff's facial redness was due to a smoke allergy or due to his other health conditions such as gout and obesity.  Dr. Kline also attested that the medical restriction to a non-smoking unit was not one of medical urgency requiring an immediate move.  Accordingly, Plaintiff cannot meet the objective component of establishing his ETS exposure constitutional violation claim because he cannot show that he had sufficiently serious medical needs requiring an immediate move or that he was subjected to a substantial risk of serious harm.

Moreover, Plaintiff cannot prove the subjective component of his ETS exposure claim because he cannot show that at the time of his request to be moved to a non-smoking unit, Defendant knew or should have known that his symptoms relating to this smoke allergy injury were so severe that he required an immediate move to a non-smoking unit.  This also ties into the second element of the defense of qualified immunity as Plaintiff has to show that the ETS exposure violation was clearly established at the time of the alleged incident.  There is no evidence establishing that Plaintiff informed Defendant that he had a serious medical need for moving to a non-smoking unit and Defendant indicated in his discovery answers that Plaintiff did not tell him of a medical restriction in his file and he lacked authority to look into Plaintiff's medical file in order to verify that a restriction existed.  Even if Plaintiff did tell Defendant that he had a smoke allergy, there was no medical restriction requiring an immediate move to a non-

16

smoking unit and Dr. Kline even attested that an immediate move was not necessary. Moreover, Defendant responded within six days of Plaintiff's contact with him and informed him of the correct procedure, which resulted in Plaintiff's move to a non-smoking unit. Thus, Plaintiff cannot establish that Defendant violated a clearly established right of which he was aware at the time that Plaintiff requested immediate placement in a non-smoking unit.

Because the undersigned has recommended that the Court find that Defendant committed no constitutional violation and was not otherwise deliberately indifferent to Plaintiff's smoking allergy, it is recommended that the Court find that Defendant is entitled to qualified immunity and grant summary judgment in favor of Defendant.

### D. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment in its entirety (ECF Dkt. #28) and dismiss Plaintiff's amended complaint with prejudice (ECF Dkt. #5).


Dated: July 31, 2007                            */s/George J. Limbert*
                                                GEORGE J. LIMBERT
                                                U.S. MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).